Good morning. It plays the court. My name is Peter Wolfe. I'm the Federal Defender. I represent Mr. Vanosa in this appeal of the denial of a recent part of the state's petition. The issue here would arise out of the Fifth Amendment and Miranda, and we have a circumstance where the Hawaii Supreme Court failed to decide the case on the proper ground. It makes it an easy decision, which is Edwards, and then failed to decide it properly on the ground. They did deal with Vanosa the most, but it only comes up as being obvious when you look at the timeline. So we have Vanosa in custody between 7.30 and 7.15 in the morning, and Detective Silva of the Maui Police Department has attempted to interrogate Vanosa. And at the end of the review of the Maui Police Department waiver form, Mr. Vanosa refuses to sign the waiver rights form. And he doesn't just refuse by failing to do it or being silent. According to Detective Silva's testimony, he said something. The detective couldn't exactly remember what, but what the detective testified was, I can't remember what exactly he told me, and maybe he just didn't want to talk to me. And the significance of that is twofold, but it's particularly unique to the Maui situation because of the waiver rights form that they used. So after telling the defendant what his rights are, the statement, the waiver form says as follows, I am willing to make a statement and answer questions without talking to a lawyer or having a lawyer press no promises or threats to me, and no pressure of any kind has been used against me. I understand that I have the right to not answer questions and to ask for a lawyer at any time. So if we were to take the first sentence, and we know it's the first sentence that is the problem of Vanosa, and put it in the form of a question, we have illustrated for us the problem of asking a compound question. Because we get an answer, we get a compound answer. So if we take the first sentence. Well, but he didn't, apart from that, though, he didn't, there's no, when I read the transcripts, there's no place where he said, you know, remember he made an ambiguous statement, an ambiguous affirmative statement where he would like to talk to a lawyer, or he'd like to have a lawyer there with him. He didn't make it. Well, here's the, yeah, that's true, but there's no ambiguity about it, because if you look at this question, he says, are you willing to make a statement and answer questions without talking to a lawyer or having a lawyer present? His answer is no. So he's not willing to make a statement. And he's not willing to make a statement without a lawyer present. And he's not willing to make a statement without having a lawyer present. This is their form. So he says, I'm not willing to do that. I refuse to do that. So Detective Sills stops. He leaves the place. And 10 minutes later, he returns with another detective, Detective Lee, who's talking about another case. But guess what? There's no way for Linolsa to know that, because the record doesn't show that Sills ever told Linolsa what he wanted to talk to him about. And so Lee, 10 minutes later, starts over with a fresh form. The exact same form that Linolsa just refused to waive his rights. Lee comes back. And for the next 28 minutes or so, with Detective Sills present, Lee persuades that Joel's thoughts were not seeking to waive his rights. And he signs a form. And then what does he do immediately upon doing that? He says, look, I need to talk, think about this some more. Please return me to my cell. And he's returned to his cell. And he's there for two hours. And what happens next? Detective Holokai, third detective, he's got something he wants to talk to Linolsa about. And he decides to bring Linolsa out of the cell and put him back for interrogation. Lee hears about it. And Lee appears. And Lee takes over the questioning, confronts Linolsa with his waiver sign two hours earlier, begins to question him. And at that point, Linolsa confesses the first of several confessions. So the first issue is this. If one views his refusal with the effect of soda to waive his rights as an indication of his right to counsel, which I think is the only sensible interpretation of what he did, we have a clear violation of Edwards. Because, number one, Linolsa never saw a lawyer. And number two, he didn't reinitiate the questioning. The questioning was always reinitiated by one or another colleague police officer. However, if you look at the factors that we're to look at, there are five. Are there not? Time to look at whether the police had given the suspect or had the warnings of the first interrogation. Suspect acknowledged they understood the warnings, which all of that he did. Whether the police immediately ceased the interrogation when the suspect indicated he didn't want to answer the question, which is exactly what happened. Whether the police resumed questioning the suspect only after the passage of time of a significant period of time, which is the question we have in front of us. Whether the police provided a fresh set of command of warnings before the second interrogation, which they did. Whether the second interrogation was restricted to a crime that had not been previously subject, which it was. So the one factor that I get to in trying to go through all of this is the time. And then I have a standard of review, don't I, Counselor? We're not on a direct appeal from the District Court in White. We're on a habeas appeal, which is a different standard. Well, that's true, but let me talk about your five factors first, if you don't mind. Those five factors are the factors applicable to analysis under the Mosley case, and not the five factors applicable under Edwards' case. Well, the reason that I picked up Mosley is because it seems to me that you've got to come across in the Edwards case that somebody ever specifically, as my colleagues suggested, unambiguously requested counsel. When they ask you if you want to talk without counsel, you say no. What's ambiguous about that? Nothing at all. Do you want to talk without a lawyer present, Mr. L? No. There's no ambiguity there. They didn't break it down. You can break this down, as the Toronto Police Department does, into separate categories. There's waiver form, which is an inspector. But the first question is, do you want a lawyer now? Yes or no? Then it goes on to something else. We're in the peculiar situation, whether we like it or not, of not really reviewing the district court, but reviewing the Supreme Court of why. Right. Did they fail to apply? Yeah. Now, what was – you have to really say that they made – not that they failed, that we disagree with the way they applied it, but was their application unreasonable? Yeah. And so in a nutshell, you've got to be able to say exactly what was unreasonable about what they said. There are two things unreasonable. This is the last thing I'm going to say about Edwards. It's unreasonable not to apply Edwards when Edwards is a controlling authority in a Miranda Fifth Amendment right to counsel case. But mostly, it's unreasonable to apply it mostly the way they did for a number of reasons. First of all, in Mosley, the suspect initially waived all of his rights. After waiving his rights, Mendoza never did that. And then after, in Mosley – In Mosley, Mendoza never did that. He never did that in initial – At the initial situation, he did not. But then thereafter, having – well, ten minutes is your best estimation of the facts. If I want to say when they finally got to what he was really doing, I might get a lot more. And so I'm looking at the timeline. But the bottom line is, when they came in the second time, he not only said, I will waive. He said, I know what my rights are. I will waive. And then he said, but however, I'd like to go back to my cell and think about it for some more time. And then, only after a couple of hours, when he then was out of his cell, did they go forth with anything. I mean, even after having waived, he says, I don't want to talk, and they don't. And then another person brings him up, and Detective Lee starts to talk. And they say a lot of things about this record. But the fact that it discloses a scrupulous honoring of the invitation of the right to silence wouldn't be one that strikes me as being obvious in this record. The police re-initiated interrogation on two separate occasions. And the 20 minutes and the 10 minutes is right in the record. Well, 12 a.m. is when Mendoza signed the second understanding of his rights. And 8.40 is what the testimony is when he signed the waiver of rights. That 28 minutes is when Detective Lee is persuading or cajoling or talking to Mendoza about why he should waive his rights. And ultimately, he does. Now we've come from 10 minutes to 28 minutes. And then if we wait until the time when he actually comes out of the cell and they do anything about it, he again is given all this opportunity to think and go over the same form, do what he has to do. This is 10.40, 10.50 a.m. when he done anything that was going to confess anything. So we can put that timeline at any time we particularly like. Well, we can't put it at any time. 8 o'clock is when the first waiver and refusal takes place. At 8.12, at 8, excuse me, at 7.50 is when Detective Silva has the refusal. At 8 o'clock is when the second interrogation begins with Silva and Lee. At 8.12 is when Mendoza signs that he understood the rights confirmation. And between 8.12 and 8.40 is when Detective Lee is telling Mendoza whatever Lee's due is why he should waive. And 8.40 is when he signs the waiver. And then he wants to go back to his cell. These are right from the record in the State Court these times. I'm not making these up. These are from the testimony. So, you know, the difficulty is, as Judge Schroeder pointed out, is that we're in AEDPA land. Yes. And we need to apply the law that's clearly established by the United States Supreme Court. Right. Our case is only we can look at them to help us understand what's clearly established, but we can't rely on our own. I couldn't agree with you more. Our own case law. So my only concern is, you know, the standards that are set, certainly within Mosley, are fairly broad, and it's hard. If you look at Mosley and you look at what happened here, and as Judge Schroeder pointed out, the problem is you have to say under all these facts it's unreasonable, the Hawaii Supreme Court decision is unreasonable, where Mosley seems to give quite a bit of leeway. Well, I don't think there's enough leeway, if you can suggest it quite frankly, because here's a critical aspect of it. The Hawaii Supreme Court reviewed this matter from the standpoint of what the detectives knew. Silva knows he's talking to Lenosa about UCPV or car theft. He never tells Lenosa that. Lee is talking to him about a rape. And Holmachai initially has in mind some third thing that he wants to talk to him about, but Lee takes over that questioning. But Lenosa has never told that. So from the standpoint of a reasonable person in the Sussex position, which is the Burkheimer decision of the U.S. Supreme Court, that's how you have to look at it, he's never told that, hey, these three guys are talking about three different things. In fact, the only reasonable interpretation, they all want to talk to him at various times about the same thing. And when that is taken into account, then it's unreasonable application of Mosley, I think, suggests that it was true. You're over your time. Thank you. Thank you. Mr. Court, good morning. Counsel Richard Lee has already been re-prosecuting the judgment of Mosley for the respondents in this case. I think the court made it abundantly clear in response to the petitioner's argument. The court needs to look at this case and decide whether the U.S. Supreme Court applied United States Supreme Court case law in an objectively unreasonable manner. In this case, it's clear that the suspect in the original car theft case was ready to rise. He refused to make a statement, but did not ask for counsel. There's no recollection of anybody saying that he asked for counsel. If you look at the waiver of rights form that is part of the record and that Mr. Wolf cited, he's trying to make an argument saying that, well, it's a double negative. He talks about a right to counsel. I think it makes the jump from just having a position of refusing to make a statement jumps to a conclusion that counsel is requested. But in that same waiver of rights form, the last sentence says, I understand that I still have the right not to answer questions and to ask for a lawyer at any time. So he's using the beginning part of that waiver, but the ending of it also indicates that, yeah, I know that I can ask for a lawyer at any time, and he did not do so. Did Silva tell him that he wanted to talk to him about the auto theft? I'm not clear on that. Double check. So we don't know. OK. So then Lee comes in. He comes in 10 minutes later. He has a new waiver of rights form. That's correct. And she's right. Signs it. Then he understands his rights. But did Silva tell him that he wanted to talk to him about something different than the arrest or the theft? It appears that he comes in later and wants to talk about a separate burglary involving the commandment schools of Mali. That may have been his intent, but did he inform Lenoso about that? It appears that he talked to another suspect who seemed to have implicated Lenoso as well. I'm not sure if that was brought up prior to Detective Voltaire asking him questions. What is clear, though, is that he signs the waiver form. He asked for time, and he gave him the time to take it. What takes place during that 28 minutes? I don't know what happened in that 28 minutes other than what Detective Lee just advised him about talking to him. It appears that he's having an argument. Obviously, according to Detective Lee, there's no request for counsel. That is clear. And somehow Detective Lee persuades him to waive his rights and sign the form. The fact of the matter is that the most important issue on this is whether there was an unambiguous request for counsel. Nobody can point to one. So based on that, looking at— What about Mosley, though? Well, you look at the Mosley factors, which we cited in our brief. And, you know, but for those 10 minutes between Detective Silva and Detective Lee, you know, it's our argument that they've met the Mosley factors. And, you know, Judge— The Supreme Court of Hawaii said, Laminosa's refusal to make a statement to Silva did not operate as an ongoing barrier to the admissibility of a separate statement concerning a different matter elicited by a different detective, Lee, two hours after Lee obtained Laminosa's signature on a different waiver. Now, that's not exact. And then it cites to Mosley on scrupulously—tests whether it was scrupulously honored. That doesn't really give a very accurate description of what happened here, does it? It doesn't portray the second officer coming in just a few minutes later. I think our analysis in our answer brief would be, I guess, more detailed than what the Hawaii Supreme Court— Yeah, but we're reviewing—you know, our question is whether or not the Hawaii Supreme Court was unreasonable or made an unreasonable application of the law to these facts. And the statement of the law may be not unreasonable, but its application to these facts is what's troubling. Well, looking at— Because it doesn't seem to have taken into account all of the facts. Well, to the extent that, you know, he was—there was a break. You got a different face come in. You know, he was taken back to his cell, and a different face comes in, and they question him again. I mean, there is a temporal—I mean, there is a difference in time, difference in who's interrogating him. And again, another set of nirvana warnings were given to him, explained to him. That was the second set. When he brought him out the third time, they didn't give him another. Well, if you look at—again, as part of the record, there are two signatures by the defendant on the second form that was used. So there's one at 8-12, and then at 2-08. As I understand it, from 10-40 to 10-50, they took him over the same form, and he confirmed the information on the voluntary form with the second signature, as I understand it. That's correct. So basically, what you have is, you know, he's been advised of his rights not once, twice, but it was three times before they actually took the statement from him. There was a ceasing of the initial interrogation, as we pointed out. Even though it's 10 minutes, there was a ceasing of that. Well, my questions to counsel were, in effect, because of what the Hawaii Supreme Court has said, which my good colleague has now read to you. If one can suggest that one comes back in 10 minutes and goes through this form, then the third quality or the third, if you would, element of what they need to do is subject to some problem. If one takes that, yeah, they come back, but he really doesn't stand or sign anything about waiving those rights until 8-40, well, then we've got 28 minutes, and that makes it a little bit different time period. Whereas if the Supreme Court, who looked at the whole of what happened here and said, okay, we know that it happened within 10 minutes and we're in talking to him, but the first time where he really took it, where the police ever took advantage of the waiver of the rights and did something where he had to talk, didn't come until 10-50, which is two hours later. And that's what the Supreme Court really has in mind, and I guess that's what I'm asking you. Can we really suggest that what happened here, given this particular situation, is a true application of Mosley, and I'm not talking about a lawyer now, I'm talking about the right to remain silent, which there's no question he was doing, suggesting he didn't want to talk. Can we really suggest that on this record? And why? What case? Where do we go? Looking at the 10-minute time period and looking at the suit, the suitcase, HSU, there's no duration of minimum. Again, I think the facts of this case, and the piece on it is applied, or there are applied to the facts of this case, is I guess the difference. In this case, there are several periods of time when the defendant was left alone, after which he was again advised of his rights. Not only the 10 minutes, but also the two hours that he was returned to his cell. And after each period of time, he's again told that not only the right to remain silent, but he also has the right to counsel, and that I can ask for another lawyer at any time and stop. So, you know, given those factors as applied to this case, it's clear that this court could find that the Hawaii Supreme Court did not misapply the United States case law. And you do agree that this is not a hard-line American affair? That's correct, because as we pointed out, the complainants, the victims of those cases, never got a good counsel of who the suspect was. He attacked from behind, and we were unable to see his face. So, yes, we would be that. Okay. Okay, you've used your time. Thank you much. Are there any questions of Petitioner's Counsel? You gave a good argument. Thank you. Thank you. Thank you. Thank you.
judges: Schroeder, Paez, Smith